

RECEIVED

MAR 1 8 2015

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY: _____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| RONALD T. ALSUP, M.D. | CIVIL ACTION NO: 13-0256 |
| VERSUS | JUDGE DONALD E. WALTER |
| UNUM PROVIDENT CORP., ET AL. | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before the court are two cross-motions, each entitled Motions for Judgment on the Pleadings/Decision on the Stipulated Administrative Record filed, filed by both the plaintiff, Ronald T. Alsup, M.D. ("Dr. Alsup"), [Doc. # 26], and the defendants, Unum Provident Corporation, Unum Life Insurance Company of America, and Provident Life & Accident Insurance Company (collectively referred to as "Unum"). [Docs. # 31]. Dr. Alsup has also moved for leave to file a reply brief, [Doc. #34], which Unum opposes. [Doc. # 35]. For the reasons assigned herein, the court finds in favor of Unum.

### I. BACKGROUND

This longstanding dispute concerns a disability claim by Dr. Alsup, an internal medicine physician, under disability policy No. 6-334-715956, which was issued by Unum to Dr. Alsup in 1986 ("the policy"). [Doc. #26-3, p. 2]. On July 27, 2005, Dr. Alsup submitted a claim under the terms and conditions of the policy. *Id.* at 3. The claim was for total disability benefits resulting from post-operative infectious discitis and progressive spinal deterioration. *Id.* at 2–3. In support of his claim, Dr. Alsup attached several medical narratives and MRI summaries. [Doc. #25, Administrative Record, (hereinafter cited to as "A.R.") at 100–173].

According to Dr. Alsup, the supporting medical documentation establishes that he is "totally disabled" within the meaning of the policy. [A.R. at 100–01]. However, Dr. Alsup claims that, despite his condition, he continued to work as an internist on a reduced patient load and schedule. [A.R. at 130–31].

On January 3, 2006, Unum wrote a letter advising Dr. Alsup of the status of his claim. The letter stated, in pertinent part, as follows:

> [W]e have come to the conclusion that there is support for restrictions and limitations that may hinder Dr. Alsup's ability to perform some of the duties of his occupation however, [sic] as it is our understanding that Dr. Alsup has continued to work in his own occupation and is still working to this day in his own occupation albeit on reduced schedule we are in need of a better explanation of exactly what duties have been affected and clear documentation of the difference in his work hours, leading up to, [sic] and following his claimed date of disability.

[A.R. at 80]. Unum then advised that "it would be appropriate to consider this claim a claim for residual disability," because Dr. Alsup continued to work as an internist. [A.R. at 81]. Unum requested that Dr. Alsup provide additional documentation to substantiate his claim in the form of pre- and post-disability appointment logs and monthly profit and loss statements. *Id.*

### A. First Lawsuit

On February 21, 2006, Dr. Alsup filed suit against Unum. *See Ronald T. Alsup, M.D. v. Unum Provident Corp. et al.*, 5:06-cv-0558 (W.D. La. 2006). Dr. Alsup alleged that Unum arbitrarily and capriciously engaged in dilatory tactics designed to delay his receipt of disability benefits under the terms and conditions of the policy. *Id.*

In the first suit, this court determined that the policy at issue is subject to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq. Id.* at Doc. #59. Thereafter,

the suit was dismissed without prejudice, due to Dr. Alsup's failure to exhaust his administrative remedies. *Id.*, Doc. # 70. The court found that Unum had not actually denied the claim and, as such, Dr. Alsup had yet to utilize Unum's internal appeals procedure. *Id.* Rather, Unum had merely suspended review of Dr. Alsup's claim until such time as Dr. Alsup provided the additional documentation necessary to support his claim. *Id.*

### B. Post-Dismissal Claim Handling

After the court dismissed the first suit, the parties attempted to mediate. [A.R. at 208]. However, the parties' discussions fell apart when Unum requested additional documents, including copies of Dr. Alsup's tax returns for the years 2004–2009, for review prior to the mediation. [A.R. at 210]. As was his practice, Dr. Alsup flatly refused to provide his tax returns.[1] [A.R. at 211]. Unum therefore cancelled the mediation and continued to request additional documentation. [A.R. at 216–219].

On October 5, 2010, Dr. Alsup provided Unum: (1) an accounts receivable spreadsheet maintained by Dr. Alsup's clinic; and (2) a copy of Dr. Alsup's *curriculum vitae*. [A.R. at 220–36]. Counsel stated that "Unum should now have everything it needs to move forward with its review of my client's claim." [A.R. at 220]. On December 31, 2010, Unum informed Dr. Alsup that it was

---

[1] In his response to Unum's request, Dr. Alsup's counsel stated as follows:

> [I] have a huge problem with [the request for] Dr. Alsup's tax returns. Tax returns are confidential under federal law, and his sources of income unrelated to his medical practice are certainly none of Unum's business. Furthermore, he has made a claim for total disability under the terms and conditions of the policy, and as you are well aware, the definition of "total disability" is not dependent upon loss of income. I am not at all inclined to turn over his personal financial data to a horde of clerks, secretaries and adjusters within the Unum Provident corporate structure and do not see how this information would have any bearing whatsoever on the mediation.

[AR 211]. The record contains several other similar statements, *i.e.* that Dr. Alsup will not provide requested documents, because Unum is not entitled to pry into Dr. Alsup's personal life. [*See* AR, 59, 181, 187, 253].

unable to properly assess his claim based on the materials he provided and again requested pay stubs, profit and loss statements, and tax returns. [A.R. at 238–40]. In response, Dr. Alsup eventually provided a portion of his tax returns on August 1, 2011. [A.R. at 245]. However, he only attached the first page of the returns and, even then, only for the years 1998 through 2003, the year the claimed disability began. [A.R. at 246–51]. No copies of his tax returns, in any form, were provided for the year 2004 onward.

Unum officially denied Dr. Alsup's claim on February 6, 2012. [A.R. at 256–69]. The denial letter stated that Unum had reviewed the additional documentation but that "this information, along with the limited information in Dr. Alsup's file, is not sufficient to allow us to calculate Dr. Alsup's pre-disability income, or his monthly work earnings, as is required pursuant to the subject policy." [A.R. at 256].

On August 1, 2012, Dr. Alsup appealed the denial via Unum's internal appeals procedure. [A.R. at 276]. In connection with the appeal, Dr. Alsup provided full copies of his tax returns, which included schedules and attachments, but those returns were limited to the years 1998 through 2002. [A.R. at 276, 401–693]. No complete copy was provided for the year 2003, the year the claimed disability allegedly began. Additionally, Dr. Alsup stated that many other requested documents—including profit and loss statements, appointment logs, and CPT codes—were no longer available due to Dr. Alsup's clinic having changed its records-keeping software program in 2006. [A.R. at 280–81].

Not satisfied with Dr. Alsup's supplemental production, Unum's appeals department requested further information. [A.R. at 759–762]. In particular, Unum noted that Dr. Alsup did not provide any financial information for 2004 onward, making calculation of his post-disability income

impossible. [A.R. at 762]. Unum gave Dr. Alsup thirty days to submit the requested documents, including "[a]t minimum," his tax returns for the years 2003–2011. *Id.* Dr. Alsup did not respond to Unum's request. [A.R. at 768]. On November 7, 2012,, Unum upheld the denial of Dr. Alsup's claim, stating that the denial was appropriate because "[w]e remain unable to confirm Dr. Alsup's pre-disability income and we remain unable to calculate his post-disability income." [A.R. at 768]. Thereafter, Dr. Alsup sued Unum a second time.

### C. Current Lawsuit

This lawsuit asserts essentially the same claims as the first. [Doc. #1-4]. Dr. Alsup alleges that his disability has rendered him unable to perform the substantial and material duties of his occupation as an internist, meaning he is "totally disabled" under the language of the policy. *Id.* at ¶¶ 19, 33. Dr. Alsup further claims that Unum has arbitrarily and capriciously refused to pay total disability benefits under the terms of the policy and that Unum has engaged in a pattern of dilatory tactics to delay him from receiving benefits. *Id.* at ¶¶ 37–39.

Unum previously moved to dismiss Dr. Alsup's claims, arguing that Dr. Alsup's repeated failure to provide proper proof of loss amounted to a failure to exhaust administrative remedies. [Doc. #4-1, p. 6]. This court disagreed, finding that Dr. Alsup had exhausted administrative remedies by submitting his claim for final decision, appealing the adverse final decision, and then filing suit after Unum affirmed its denial. [Doc. #17, p. 4]. This court noted that Dr. Alsup had, in fact, provided some of the requested documentation, although its sufficiency remains vehemently disputed. *Id.* at 2–4. Additionally, this court held that the question of whether Unum's denial was arbitrary and capricious is a matter for summary judgment. *Id.* at 4 (citing *Sweatman v. Union Ins. Co.*, 39. F.3d 594, 600 (5th Cir. 1994)). This court therefore denied Unum's motion to dismiss and

suggested that the parties re-open mediation discussions. [Doc. 17, p. 5].

The parties participated in a settlement conference with Magistrate Judge Mark Hornsby on November 11, 2013, but were unable to reach a settlement. [Doc. #19]. Accordingly, this court ordered the parties to prepare an administrative record for the courts' review and submit briefs on the merits. [Doc. #21]. Those briefs are now before the court. [Doc. ##26, 31].

Dr. Alsup argues that he has provided more than ample evidence that he is "totally disabled" within the meaning of the policy. [Doc. #26-3, pp. 13–15]. He asserts that the definition of total disability does not include a financial component and therefore Unum's denial of benefits based on Dr. Alsup's failure to provide proof of financial loss was arbitrary and capricious. *Id.* Dr. Alsup further argues that Unum acted with a dilatory purpose by repeatedly requesting additional documents on top of those he had already provided. *Id.* at 15–20.

Unum argues that the denial of benefits was proper for two main reasons. First, Unum argues that Dr. Alsup continues to work as an internist, and is thus not entitled to total disability benefits. [Doc. #31-1, pp. 14, 19]. Second, Unum argues that its decision not to pay residual disability benefits is justified because Dr. Alsup has repeatedly failed or refused to provide satisfactory proof of loss. *Id.* at 15–24.

## II. LAW & ANALYSIS

As this court held in the previous lawsuit, the policy is governed by ERISA. When the language of an ERISA policy or plan "grants discretion to the plan administrator to interpret the plan and determine eligibility for benefits, a court will reverse an administrator's decision only for abuse of discretion." *High v. E-Systems, Inc.*, 459 F.3d 573, 576 (5th Cir. 2006). Abuse of discretion is the appropriate standard in this case, insofar as the policy requires Dr. Alsup to provide satisfactory

proof of loss for either total disability or residual disability benefits. [A.R. at 14, 17]; see also, e.g., *Goldman v. Hartford Life and Acc. Ins. Co.*, 2004 WL 2414084, at *6 (E.D. La. 2004).

"A plan administrator abuses his discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." *Holland v. Int'l Paper Co., Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009). The court may find abuse of discretion "only where the plan administrator acts arbitrarily or capriciously." *Id.* (citation omitted). A plan administrator's decision to deny benefits is arbitrary and capricious when it is made without a rational connection to the facts and evidence. *Id.* Utilizing this standard of review, the court can reverse the plan administrator's decision only in the absence of substantial evidence to support the decision. *Castille v. La. Health Serv. & Indem Co.*, 2009 WL 259402, at *2 (W.D. La. 2009).

"Substantial evidence" in the context of an ERISA case means "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004). The court's review of an administrator's decision "need not be particularly complex or technical; it need only assume that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end." *Holland*, 576 F.3d at 246 (internal citation omitted). Given the deferential abuse of discretion standard applied in ERISA cases, the court "must not disturb an administrator's decision if it is reasonable, even if the court would have reached a different decision." *McCorkle v. Metropolitan Life Ins. Co.*, 757 F.3d 452, 459 (5th Cir. July 3, 2014) (citing *Donovan v. Eaton Corp. Long Term Disability Plan*, 462 F.3d 321, 326 (4th Cir. 2006)) (emphasis removed).

"Eligibility for benefits under any ERISA plan is governed in the first instance by the plain

meaning of the plan language." *Tucker v. Shreveport Transit Mgmt. Inc.*, 226 F.3d 394, 398 (5th Cir. 2000). Plan terms are interpreted in accordance with "their ordinary and popular sense as would a person of average intelligence and experience." *Crowell v. Shell Oil Co.*, 541 F.3d 295, 314 (5th Cir. 2008). The court does this so that the terms in a plan are "construed as they would likely be understood by the average plan participant, consistent with the statutory language." *Id.* Importantly, when reviewing an administrator's interpretation of plan terms for abuse of discretion, the doctrine of *contra proferentum*—which provides that ambiguous terms are construed in favor of the insured—is inapplicable. *High*, 459 F.3d at 578–79. In fact, plan administrators are allowed "interpretive discretion" when construing ambiguous terms in ERISA plans. *Id.* at 579.

After a thorough review of the administrative record, the court concludes that Unum's denial of benefits was not an abuse of discretion.[2] As this court has noted before, it is clear that Dr. Alsup suffers from a spinal condition, and that Unum has conceded that Dr. Alsup's condition may restrict, limit, or hinder his ability to work as an internist. [Doc. #17, p. 2]. Nevertheless, as will be explained below, the fact that Dr. Alsup is still working as an internist is fatal to his claim for total disability benefits, and Dr. Alsup's failure to provide essential proof of loss left Unum no choice but to deny residual disability benefits as well.

The policy defines "Total Disability" and "Residual Disability" as follows:

**Total Disability** means that due to Injuries or Sickness:

> 1. you are not able to perform the substantial and material duties of your occupation; and
> 2. you are under the care and attendance of a physician.

---

[2] The court need not reach Unum's alternative claims regarding timeliness, [Doc. #31-1, pp. 24–27], and spoliation, *id.* at 27–28.

> your occupation means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled.
>
> . . .
>
> **Residual Disability** means that due to Injuries or Sickness:
>
>> 1. you are not able to do one or more of your substantial and material daily business duties or you are not able to do your usual daily business activities for as much time as it would normally take you to do them;
>> 2. you have a Loss of Monthly Income of at least 20%; and
>> 3. you are under the care and attendance of a physician.

[A.R. at 13, 16].

The Fifth Circuit, in analyzing substantively identical policy provisions to those at issue in this case, has explained that a claimant is totally disabled "only if he or she cannot perform each and every material and substantial duty of his or her occupation." *House v. American United Life Ins. Co.*, 499 F.3d 443, 453 (5th Cir. 2007) (citing *Ellis v. Liberty Life Assurance Co. Of Boston*, 394 F.3d 262, 272 (5th Cir. 2004). On the other hand, a claim for residual disability is appropriate when a claimant is "able to perform one or more, but not all, of the material and substantial duties of his or her occupation." *House*, 499 F.3d at 453 (citing *Ellis*, 394 F.2d at 271–72).

Here, Dr. Alsup continues to work as an internist, and thus he is necessarily able to perform at least some duties of his occupation. Dr. Alsup argues that he meets the policy's definition of total disability because he cannot perform his occupation at the level he once did. [Doc. #26-3, pp. 13–14]. Such a reading would render the policy's residual disability provisions completely meaningless and would convert all claims under the policy into total disability claims. Therefore, Unum's decision to treat Dr. Alsup's claim as one for residual disability was not an abuse of discretion. Unum informed Dr. Alsup of this position at the outset when it advised Dr. Alsup that

"it would be appropriate to consider this claim a claim for residual disability . . . ." [A.R. at 81]. Dr. Alsup's insistence that he is making a claim for total disability does not preclude Unum from considering the fact that Dr. Alsup is still working.

With the proper reading of the policy in mind, the court further concludes that Unum's denial of Dr. Alsup's claim was appropriate under the circumstances. The policy provides that Unum may require any proof which it considers necessary to establish pre- and post-disability income so that the amount of residual disability benefits can be calculated. [A.R. at 16–17]. For over a decade now, Unum has sought documents from Dr. Alsup which could have established the extent of Dr. Alsup's loss and would have allowed Unum to calculate the required amount of residual disability benefits. In fact, the requested financial documents may have even been able to establish that Dr. Alsup was totally disabled, insofar as the policy provides that a loss of monthly income greater than 75% will be treated as a loss of 100%. [A.R. at 16]. Despite Unum's repeated requests, and despite the language of the policy allowing Unum to require satisfactory proof of loss, Dr. Alsup repeatedly failed or simply refused to provide the documents. The lack of supporting documentation left Unum with no choice but to deny the claim.

In dismissing the first suit, this court concluded that Dr. Alsup had failed to provide Unum with "information to determine the extent of his disability on his earning capacity." 5:06-cv-0558, Doc. #70, p. 5. Although Dr. Alsup has since produced additional documents, the production was piecemeal, incomplete, and altogether inadequate to establish Dr. Alsup's entitlement to benefits. As noted above, Dr. Alsup has elected to only provide complete tax returns only up to the year 2002. He provided only a partial tax return for 2003 (the year the claimed disability began), and no tax returns at all for 2004 onward. The only post-disability financial documentation in the record

consists of an accounts receivable spreadsheet from Dr. Alsup's clinic. [A.R. at 223–32]. This document contains a summary of the total amounts charged by clinic doctors on a monthly basis from 1997 through 2010. However, it does not indicate how Dr. Alsup is compensated or in what amount he is compensated. Additionally, this document sheds no light on Dr. Alsup's alleged practice limitations or reduced schedule. If anything, the document merely confirms that Dr. Alsup continues to work as an internist. Considering the lack of information regarding the extent of Dr. Alsup's disability, it was reasonable for Unum to deny the claim, and this court is not at liberty to disturb that decision. *E.g.*, *McCorkle*, 757 F.3d at 459–60. Accordingly, Unum's denial of Dr. Alsup's claim was appropriate.

### III. CONCLUSION

For the foregoing reasons, the court finds that Unum's denial of benefits was not an abuse of discretion. Accordingly:

**IT IS ORDERED** that Unum's motion for judgment on the pleadings/decision on the stipulated record, [Doc. #31], be and is hereby **GRANTED** and that Dr. Alsup's suit be and is hereby **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Dr. Alsup's motion for judgment on the pleadings/decision on the stipulated record [Doc. #26] be and is hereby **DENIED**; and

**IT IS FINALLY ORDERED** that plaintiff's motion for leave to file a reply brief, [Doc. #34], be and is hereby **DENIED AS MOOT**.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 18 day of March, 2015.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE